UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

CONNIE J. YOUNG,                    )
                                    )
            Petitioner,             )
                                    )
v.                                  )        Nos. 2:11-cv-08 and 2:06-cr-20(4)
                                    )        *Judge Greer*
UNITED STATES OF AMERICA,           )
                                    )
            Respondent.             )

## MEMORANDUM OPINION

Acting *pro se*, Connie J. Young ["petitioner" or "Young"] filed this motion for post-conviction relief under 28 U.S.C. § 2255, and a supporting brief, [Doc. 475 and 476].[1]  In his pleading and accompanying brief, Young alleges, as grounds for relief: (1) that his counsel gave him in effective assistance and (2) that the prosecutor engaged in misconduct.  Pending before the Court is the United States's response to the motion to vacate, supported by the affidavit of petitioner's counsel, Wayne Stambaugh, and Young's reply to that response, [Docs. 544, Attachment 1, and 545].  For the reasons which follow, petitioner's motion to vacate will **DENIED**.

## I.  Procedural Background

In Count one of a fourteen-count superseding indictment returned by the federal grand jury on June 13, 2006, [Doc. 9], Young was charged, along with multiple co-defendants, with conspiring to distribute and possess with the intent to distribute five kilograms or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and § 846.  Young and two of his co-defendants proceeded to a jury trial, where he was convicted of Count one and sentenced to serve a life term, as mandated by statute.  Young unsuccessfully appealed his conviction and

---

[1]       Each document will be identified by the court file number assigned to it in the underlying criminal case.

sentence. *United States v. Young*, 347 Fed. Appx. 182, 2009 WL 3073164 (6th Cir. Sept. 28, 2009), *cert. denied*, 559 U.S. 957 (Feb. 22, 2010).

Thereafter, petitioner submitted a plethora of filings to this Court and to the Sixth Circuit. The first batch of submissions consisted of a motion for a new trial, an amended motion for a new trial, [Docs. 460 and 463], and a petition for a writ of mandamus, [Docket Entry of April 4, 2011 and Doc. 484].  The motions for a new trial were denied, [Doc. 486], and Young filed both a notice of appeal from the order denying his motions for a new trial, [Doc. 488], and a motion to alter or amend that judgment order under Rule 59(e) of the Federal Rules of Civil Procedure, [Doc. 491].  Petitioner's Rule 59(e) motion was denied, [Doc. 492], and Young appealed that order also, [Doc. 493].  Ultimately, the Sixth Circuit denied both Young's  petition for a writ of mandamus and his appeal of the denial of his motions for a new trial, [Docs. 495 and 508].

On January 6, 2011, after his direct appeal was denied, but in the midst of filing the above motions and pleadings, Young submitted the instant § 2255 motion and supporting memorandum brief.

## II.  Standard of Review

This Court must vacate and set aside Young's conviction upon finding that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack ...." 28 U.S.C. § 2255(b).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief.  *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961).  "Conclusions, not substantiated by allegations of fact with some

probability of verity, are not sufficient to warrant a hearing." *Green*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). A petitioner must prove that he is entitled to relief by a preponderance of evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted. If the motion to vacate, the answer, and the records of the case show conclusively that the petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986). The Court **FINDS** no need for an evidentiary hearing in the instant case.

### III. Factual Background

The facts are drawn from the Sixth Circuit's opinion on direct review of Young's conviction. *See United States v. Young*, 347 Fed. Appx. at 182, 184. According to proof presented at trial, Rickey Story was at the helm of a conspiracy to sell considerable amounts of cocaine and cocaine base in the Eastern District of Tennessee. The conspiracy ultimately

involved fourteen people, eleven of whom pleaded guilty. Story would receive the drugs from two sources: (1) a source called "Carlos," who was never apprehended, and (2) a source in South Carolina. Evidence at trial indicated that Young was the source of the drugs in South Carolina.

Story would go to South Carolina several times a week, accompanied by another co-defendant and would return with nine to eighteen ounces of cocaine at a time. After they cooked some of the cocaine into crack cocaine, Story would give it and powder cocaine to other co-defendants and other individuals to sell in and around eastern Tennessee.

## IV. Discussion

In his § 2255 motion, Young offers various purported misdeeds on the part of his counsel to illustrate his claims that he received ineffective assistance. According to the face of the motion, petitioner was represented by Carey C. Taylor at his arraignment and plea, Wayne Stambaugh at trial and sentencing, and Robert Vogel on his direct appeal. Most, if not all, of the claimed errors are attributed to Attorney Stambaugh. Petitioner also asserts, as his final claim, that in several instances the prosecutor engaged in misconduct.

### A. Ineffective Assistance

### 1. Relevant Law

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so

4

serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a break down in the adversary process that renders the result unreliable.

466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the movant. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A petitioner asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Moreover, counsel's conduct is strongly presumed to fall within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

The second prong of the *Strickland* test requires the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized that both prongs must

5

be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

## 2. Analysis

At the outset, the list of ineffective assistance claims in Young's supporting brief does not jibe with the bare bones claims offered in his motion to vacate. Because petitioner, for the most part, relies on his brief for the factual development of claims presented in his motion, the Court has arranged its discussion to address the claims in the order in which they are listed in the brief.

As to any of the skeletal claims raised in the § 2255 motion, but not factually developed in the brief, the Court finds those claims to be conclusory. Rule 2 of the Governing Rules requires that the motion, among other things, "specify all grounds for relief available to the moving party" and "state the facts supporting each ground." A petition which fails to state the supporting facts is legally insufficient on its face and federal courts are thus authorized to summarily dismiss that petition. *McFarland v. Scott*, 512 U.S. 849, 856 (1994). Any claim of this description is **DISMISSED** as legally insufficient. *See United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) (vague and conclusory allegations in a petition may be disposed of summarily without further investigation by the court); *Oliver v. United States*, 961 F.2d 1339,

1343 n.5 (7th Cir. 1992) (finding that a § 2255 petition cannot stand on vague and conclusory assertions of a constitutional violation; rather, the petition must set forth facts with sufficient detail to point the district court to the real possibility of a constitutional error); *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989) (holding that vague or conclusory allegations warrant summary dismissal of § 2255 claims); *United States v. Aiello*, 814 F.2d 109, 113-114 (2d Cir. 1987) (holding that a § 2255 petition must be based on more than "[a]iry generalities, conclusory assertions and hearsay statements"); *United States v. Unger*, 635 F.2d 688, 691 (8th Cir. 1980) (holding that "[c]onclusory assertions that a defendant's pleas were involuntary and coerced are insufficient").

### 3. The Claims

The Court turns now to the claims outlined and argued in petitioner's brief.

#### a. Counsel Failed to Investigate a Potential Witness & a Key Prosecution Witness

Petitioner submits, as his first set of alleged attorney errors, that counsel failed to investigate co-defendants Terry Dawkins and Rickey Story—the former as a potential defense witness and the latter as the main prosecution witness. A little history will help place the asserted errors in context.

Based on two controlled drug buys from Story, law enforcement agents obtained a Title III wiretap order for Story's cellular telephone. The order allowed the wiretap to be attached for thirty days, beginning in February of 2006, but the order was extended for thirty days upon the request of the agents, and permitted text messages to be intercepted as well. Information gleaned from the wiretap allowed agents to identify others involved with Story in selling cocaine, including Young and Terry Dawkins. The evidence against Young consisted primarily of Story's testimony and information gleaned from the wiretap. Story identified Young as Dawkins's source

for cocaine in South Carolina. Though he was never introduced to Young, Story had spoken with him once or twice. Story also indicated that Dawkins would go to Young's house to get the cocaine.

David Chambers, a former DEA task force agent and then officer with the Washington County Sheriff's Department, testified that the voices on the wiretap were linked to names by retrieving the subscriber information for the numbers calling Story and by linking names to voices by context. For example, following a call, Story would make an outgoing call and would tell the recipient of the call that, "I just got done talking to Terry." In addition, phone company records were subpoenaed to provide subscriber information for numbers which called or were called from the tapped phone. Acting on this information, the agents would then retrieve the criminal history for each caller. On the recorded calls, Story spoke only once to Young, but Dawkins and Young spoke on the phone four or five times. Story identified Dawkins and Young talking about drugs on several of the recorded calls and making plans to meet in South Carolina. Story also indicated that, in one of the recorded calls, Dawkins told him that Young was going to front Dawkins seven ounces of cocaine. Story also noted that, in another call, Dawkins referred to "Jeremy" and that "Jeremy" meant Young.

Former Agent Chambers admitted that he had no basis personally to identify Young's voice, but stated that he had relied on Story's identification and on "other factors that corroborated that-what he told me, the phone call I listened to, and Mr. Young's criminal history." The mention of Young's criminal history prompted counsel to request a mistrial, which was denied. Counsel was then offered a limiting instruction, which he refused after conferring with his client.

8

Against this factual backdrop, Young contends that an investigation of Dawkins by counsel would have shown that Dawkins would have provided exculpatory testimony which, in turn, would have undermined the government's evidence and would have demonstrated Young's lack of knowledge, intent, and participation in the conspiracy.[2]  Petitioner has submitted Dawkins's "affidavit" to support this claim, [Doc. 476-2].  In this document, Dawkins disavows knowing, seeing, or speaking to Young prior to or during the time of the conspiracy or identifying Young as "Jermy" (sic) to anyone in the conspiracy.

Young next contends that counsel should also have investigated Story.  Story, so Young maintains, was not a cooperating witness who would gain nothing from his cooperation with the government, but instead, contrary to what the government insisted, was an informant working in the investigation of the case.  Counsel's investigation of Story would have led him to investigate and obtain documents involving Chambers's grand jury testimony, in which he (Chambers) stated that Story was untrustworthy and unreliable.  To support these allegations of ineffective assistance, Young has submitted an excerpt of Chambers's grand jury testimony, which purportedly was obtained from Attorney Vogel, who represented Young on appeal, [Doc. 476, attachment 4, Grand Jury Testimony of David Chambers].

Young tosses in an additional illustration of ineffective assistance by contending that trial counsel failed to secure a copy of a report detailing an interview agents conducted with another co-defendant.  The report supposedly would have shown a discrepancy between the interview and the co-defendant's trial testimony.  More specifically, in the report, the co-defendant stated that Story received a traffic ticket while bringing marijuana from South Carolina to Tennessee. (This co-defendant testified at trial that the ticket was received while Story was transporting

---

[2]        One element of a conspiracy which the government must prove  is "each conspirator's knowledge of, intent to join, and participation in the conspiracy."  *Young*, 347 Fed. Appx at 187-88 (quoting *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001)).

Case 2:06-cr-00020-JRG-MCLC   Document 554   Filed 04/15/14   Page 9 of 42   PageID #: 1864

*cocaine*—the controlled substance involved in the charged conspiracy offense, [Doc. 359, Tr. T. vol. III, Testimony of Deborah Demery at 52-54].)

Had counsel secured these documents, so Young asserts, the results of the trial would have been different. The Court does not agree, as there is no reasonable probability of a different outcome had these documents been provided to counsel.

First of all, even if Dawkins were in possession of exculpatory evidence, he states in his "affidavit" that he gave the information to his attorney, who advised him not to testify, "as this would prejudice [his] defense." Therefore, Young's lawyer would have had no way to produce the evidence for the jury's view, as Dawkins followed his attorney's advice and did not testify at the trial.

Secondly, this is not the first time Young has offered Dawkins's statement to support an argument that Dawkins's testimony would have refuted the government's case. This document was offered to bolster petitioner's Rule 33 motion for a new trial and, when this Court denied the motion, the claim regarding the alleged exculpatory evidence and the "affidavit" were carried to the Sixth Circuit on appeal, [Doc. 508, *United States v. Young*, Nos. 11-5477/5692 (6th Cir. Feb. 7, 2012 (unpublished order)]. After noting the questionable nature of the unsworn "affidavit," the Sixth Circuit found that, even crediting the document, Dawkins's disclosure that he did not know Young would not have likely resulted in an acquittal.

Furthermore, under Tennessee's attorney ethics rules, a lawyer who represents a client is prohibited from "communicat[ing] about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." *State v. Beeler*, 387 S.W.3d 511, ___ n.7 (Tenn. 2012) (citing Tenn. S. Ct. R.8, Rules of Professional

Responsibility 4.2). Counsel cannot be held to have rendered a deficient performance for failing to do that which he was under a professional obligation not to do, absent permission of Dawkins's counsel. It is unlikely that Young's counsel, given Dawkins's attorney's advice to his client that testifying and disclosing the information would prejudice his defense, could have obtained that permission.

As to Chambers's grand jury testimony, a fair reading of the relevant portion of the transcript demonstrates that Chambers was referring to a lack of trust in law enforcement officers on the part of drug dealers and distributors who first begin cooperating with those officers and to his own lack of confidence that Story would continue to cooperate with the officers, though he hoped that cooperation would continue. As respondent points out, Chambers did not state, however, that he did not trust the *information* which Story had given and, indeed, that information had been verified by the wiretap recordings and other evidence. Expressing doubt that a target of an investigation into a drug dealing conspiracy will persist in cooperating in that investigation is not the same thing as mistrusting evidence derived from that cooperation.

Moreover, if Story were considered to be an informant, rather than a cooperating witness, the Supreme Court has noted that even if an informer has a motive to lie, it "does not follow that his testimony was untrue" and that the veracity of a witness is "to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury." *Hoffa v. United States*, 385 U.S. 293, 311-312 (1966). Here, Story was subjected to intensive cross-examination, not only by Young's counsel, but also by the co-defendants' attorneys. And there is nothing to suggest that the jury was not properly instructed concerning Story's testimony.

With respect to the documents which Young maintains would have shown a co-defendant's purported inconsistent statements, the record does not show that the statements were actually inconsistent. During the interview, the co-defendant stated that Story traveled to South Carolina and obtained approximately ten pounds of marijuana, but at trial, she testified that Story had told her that "he had quite a bit of drugs, along with cocaine,"[Docs. 476-5 (excerpt of DEA-6 Report) and 359 (T. Tr., vol. III, Demery Testimony at 54)]. It is important to note that the witness did not exclude marijuana from the drug cache Story was transporting. Thus, the "quite a bit of drugs," which included "cocaine," to which the co-defendant testified at trial does not contradict her interview statement that Story was transporting ten pounds of marijuana. For these reasons, defense counsel did not render a prejudicial performance in failing to obtain the cited documents.

### b. Counsel Failed to Investigate & to Move to Suppress Wiretap Evidence

Young asserts, in his next ineffective assistance claim, that the government introduced wiretap conversations and provided the jury with transcripts that identified him in the conversations with Dawkins—a non-testifying co-defendant. Counsel failed to object or request any limiting instructions or to investigate, prepare, present a defense, or subject the government's case to any meaningful adversarial challenge. More specifically, petitioner maintains that the wiretap evidence was vulnerable to a challenge based on the "necessity requirement" in 18 U.S.C. § 2518(1)(c), which dictates that a wiretap application contain a full and complete statement as to whether other investigative procedures have been tried and failed or why those other procedures reasonably appear to be unlikely to succeed if tried or to be too dangerous, so as to justify a wiretap. Petitioner maintains that the affidavit supporting the wiretap contained no particular information as to why physical surveillance, grand jury

subpoenas, cooperating sources, search warrants, or phone-toll records were tried and unlikely to succeed as used against him.

Young relates that he asked counsel to file a motion to suppress the wiretaps with respect to the six calls which were intercepted in which he was alleged to have participated, advising counsel that he [Young] was not involved in those conversations and that he had been misidentified as a participant. Counsel's response to this request was that physical evidence was suppressible, but that wiretap evidence was not, and that " without five kilos the Government won't be able to obtain a conviction on what they got you indicted for anyway."

Later, Young received from appellate counsel a copy of a notice which had been sent to trial counsel, advising counsel that, in certain conversations, his client may have been misidentified. Young also received copies of the wiretap affidavits and orders, which revealed, by Young's lights, that the affidavits proffered by Chambers did not meet the necessity requirement and, moreover, that Chambers had given false, misleading statements and had made material omissions involving whether the wiretap was used as the first step in the investigation of Young, as opposed to Story, the subject of the wiretaps. But for these particular failings on counsel's part, according to petitioner, the result of the proceedings would have been different.

In its response, the United States first points out that the wiretap at issue was placed on Story's cellular telephone, not on Young's phone. Even so, the governing statute permits "an aggrieved person," i.e., "a party to any intercepted ... communication," 18 U.S.C. § 2510(11), such as Young, to move to suppress intercepted communications on three bases: that the communication was derived from (1) an unlawful interception or (2) a court order which was facially insufficient, or (3) where the interception was not in conformity with the order. 18

U.S.C. § 2518(10)(a)(i)-(iii) and (11). Evidence from a wiretap is not admissible at trial "if the disclosure of that information would be in violation of [the wiretap act]." 18 U.S.C. § 2515.

The "necessity requirement" (i.e., that part of the statute which dictates that the application for a wiretap contain an affidavit demonstrating that ordinary law enforcement methods of investigation are inadequate and that a wiretap thus is necessary), imposed on obtaining a wiretap is meant to ensure that wiretapping "is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n. 12 (1974). Thus, as petitioner points out, the affidavit which seeks a wiretap must specify "whether other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." But the affidavit need not show the "absolute impossibility of all other means," *United States v. Alfano*, 838 F.2d 158, 161–62 (6th Cir. 1988), but only that "serious consideration" was given to other investigatory techniques, along with the reasons as to why those other techniques would not suffice. *United States v. Rice*, 478 F.3d 704, 710 (6th Cir. 2007).

The affidavit in this case, a copy of which was attached to petitioner's brief in support of his § 2255 motion, meets those requirements, [Doc. 476-6]. This affidavit supported the request to extend the authorization of the wiretap on Story's cellular telephone and it details the normal investigatory methods the authorities had used, such as physical surveillance, confidential sources and informants, and gives the reasons supporting those authorities' belief that the techniques used thus far and other ones which had been considered, including grand jury subpoenas, interviews, or consensual monitoring, would be inadequate to uncover the full scope of the conspiracy and the identities and roles of all the coconspirators. This Court presumes that its wiretap authorization order was proper and now finds that petitioner has not borne his

"burden of overcoming this presumption." *United States v. Kelley*, 596 F. Supp. 2d 1132, 1143 (E.D.Tenn. 2009), *aff'd,* 459 Fed. Appx. 527 (6th Cir. 2012), *cert. denied*, 133 S.Ct. 261 (2012) (citations omitted).

Finally, to the extent that Young is alleging that the affidavit or order had to give specific authorization to intercept *his* communications, that allegation would be a non-starter. There was no need to have petitioner named as the person against whom the interception was directed in order to have his communications recorded and used against him at trial. As the Fifth Circuit stated: "we have never required that a defendant be named in a wiretap application or accused of using the suspected telephone before evidence obtained by the wiretap can be used against him. One of the objects of wiretapping is to ascertain the full extent of participation in criminal activity, and we need not limit retrospectively the pool of potential defendants." *United States v. Hyde*, 574 F.2d 856, 862 (11th Cir. 1978); *see United States v. Donovan*, 429 U.S. 413, 439 (1977) (defendant's intercepted conversation showing his involvement in illegal conduct was admissible though he was not named in initial application).

Because a motion to suppress the evidence procured through the wiretap for the reasons Young now proposes would not have succeeded, trial counsel did not provide ineffective assistance by failing to pursue such a futile motion, since counsel has no duty to assert a legally baseless claim, *United States v. Martin*, 45 Fed. App'x 378, 381 (6th Cir. 2002); *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986), and since he cannot be ineffective when he does not raise that claim. *Greer v. Mitchell*, 264 F.3d 663, 676 (2001). Counsel committed no error in this respect.

### c. Counsel was Absent During a Critical Stage/Constructive Denial of Counsel

Counsel's next alleged shortcoming was his failure to attend a pretrial conference on June 26, 2007. The minutes of that combined pretrial conference and motion hearing reflect that only one of the six defendants (Elisa Grooms) and one of the six defense attorneys (Jerry W. Laughlin) appeared personally, [Doc. 216]. Trial counsel's absence was addressed by the Pretrial Order of U.S. Magistrate Judge Dennis Inman, the presiding judicial officer, which explained that "Attorney Wayne Stambaugh, representing defendant Connie Young, was excused from attending," [Doc. 217]. Likewise, the transcript of the hearing shows that Judge Inman further explained at the hearing that "Mr. Young's only Motion is more or less identical to Ms. Grooms' 404B Motion, so Mr. Stambaugh understandably is not here," [Doc. 402, Hr'g Tr. at 3-4].

The transcript likewise demonstrates that Mr. Laughlin, when asked whether there was anything he needed to add, declined the offer to submit further evidence or argument and indicated that he and Young's counsel had both filed a memorandum brief, with the obvious implication being that, in both counsels' judgment, the issues had been presented fully in the motions and required no further elaboration or argument, [*Id.* at 4]. Indeed, the United States has presented Mr. Stambaugh's affidavit, in support of its response, in which he states that he did not feel it necessary to be present at the pretrial conference and motion hearing due to the nature of the motion he had filed on Young's behalf, [Doc. 544-1, Affidavit of Wayne R. Stambaugh at 5].

Also, Rule 43(a) of the Federal Rules of Criminal Procedure lists the proceedings at which a defendant's presence is required (i.e., the initial appearance, the initial arraignment, the plea, every trial stage, to include jury impanelment and the return of the verdict, and sentencing), as well as those where his presence is not required, including a "proceeding [which] involves

16

only a conference or hearing on a question of law." Fed. R. Crim. P. 43(b)(3). At the pretrial hearing conference at issue, not only was no evidence adduced, but no evidentiary or legal question was raised, argued, determined or even addressed. The pretrial conference in this case appears to have been a pro forma type of conference—one which most closely resembles the category of proceedings described in the rule which dispenses with a defendant's presence.

Yet Young suggests that counsel, had he been present at the pretrial conference, could have sought suppression of the wiretap evidence. That suggestion is not well taken, given that the motion deadline was set for May 24, 2007, [Doc. 170], about one month before the trial was set, and remained fixed, even though the trial was continued and other deadlines were extended, [Doc. 13]. Given the deadline for filing motions, petitioner gives no reason as to why the Court would have entertained a motion to suppress, in either oral or written form, at the pretrial conference on June 26, 2007, well after the time for filing motions had expired.

Petitioner next maintains that counsel's absence from the hearing in and of itself amounts to ineffective assistance, without a showing of prejudice. Petitioner argues that the pretrial conference was a critical stage of the criminal proceedings against him and that counsel's absence from and inability otherwise to assist his client during the conference means that the standard enunciated in *United States v. Cronic*, 466 U.S. 648, 659-62 (1984) (establishing a per se presumption of prejudice in very limited situations), is applicable to these claims. Since *Cronic* applies, according to petitioner, he need not demonstrate prejudice to prevail on his ineffective assistance claim. The United States, citing generally to *Van v. Jones*, 475 F.3d 292 (6th Cir. 2007), counters that the pretrial conference was not a critical stage, warranting a presumption of prejudice, and that petitioner has not alleged, has not shown, and cannot show, any prejudice.

A defendant enjoys the right to the assistance of counsel during all critical stages of trial. *Rushen v. Spain*, 464 U.S. 114, 117 (1983); *King v. Bobby*, 433 F.3d 483, 460 (6th Cir. 2006). Counsel's absence from a critical stage of trial is a structural error which mandates an automatic reversal, without a showing of prejudice. *Cronic*, 466 U.S. at 658-61 (explaining that "[t]he presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial"). A critical stage of trial typically includes a period during which "an opportunity may be irretrievably lost, or material may come out which may be incurably damaging," *Van*, 475 F.3d at 314-15, such as when evidence is offered that is probative of a defendant's culpability or that further implicates a defendant in criminal activities, since those things bear heavily on the ultimate question of guilt. *Olden v. United States*, 224 F.3d 561, 568 (6th Cir. 2000) (citing *Green v. Arn*, 809 F.2d 1257, 1263 (6th Cir.1987), and *Vines v. United States*, 28 F.3d 1123, 1129 (11th Cir.1994)). Yet, in some cases, defense counsel's absence is so de minimis that no constitutional importance attaches to it. *Green*, 809 F.2d at 1261.

Here, in the pretrial conference and motion hearing, Young's Rule 404(b) motion, along with that of Grooms, were noted by Judge Inman. Those motions were considered and denied by subsequent written order, on the bases that Rule 404(b) is a rule of evidence, not discovery, and that the Rule requires only the *general nature* of crimes, wrongs or other acts be disclosed, upon a defendant's request, and not the *specific, detailed* information sought in the motions. Furthermore, Judge Inman pointed out in his order that a prior discovery order required the government to give Young seven days notice of any Rule 404(b) type evidence it intended to use, while the motion sought to enlarge that notice to fourteen days. Judge Inman found that Young's motion did not contain a reason for overruling the discovery order.

The transcript of the hearing further discloses that only housekeeping matters were topics of the rest of the discussion, with the United States advising the Court that the estimated length of the trial was four days and that it anticipated that no evidentiary or legal issues would arise (and, thus, require a judicial decision), [Doc. 402, Hr'g Tr. at 4]. Therefore, there is no discernible indication that there arose any subsequently-lost opportunity for Young to defend himself against the drug-conspiracy charge or that *any* evidence whatsoever was presented, let alone evidence relevant to Young's guilt or further implicating him in the charged drug conspiracy. As was the case with the earlier alleged attorney errors, this error likewise lacks merit and warrants no relief.

### d. Counsel Failed to Move for a Severance

Petitioner complains that counsel failed to move to sever his trial from that of his co-defendants. While petitioner fails to identify explicitly the co-defendant whose trial should have been severed from his trial, it fairly can be presumed, based on the arguments Young has advanced in support of his allegation, that Dawkins is that co-defendant. For example, petitioner asserts that eight of the intercepted conversations were between Dawkins and Story, that six were alleged to have occurred between Dawkins and himself, and that Story, in his testimony, said that he did not know Young, yet he still identified Young as a participant in some of the conversations, or as "Jeremy," the person who Dawkins stated was going to "front" Dawkins cocaine or who Dawkins intended to visit in South Carolina and from whom to procure drugs. The Court infers that Young is claiming that, had counsel successfully pursued a severance, these intercepted conversations could not have been introduced against him, given Story's testimony that he did not know Young and that he had never seen any of the alleged drug

dealings that took place when Dawkins traveled to South Carolina, purportedly to get drugs from Young and others.

In making out his claim, Young cites to *Bruton v. United States*, 391 U.S. 123 (1968), which "prohibits the introduction of statements made by a non-testifying co-defendant that implicate the defendant because they would deprive the defendant of the right to confrontation." *United States v. Mooneyham* 473 F.3d 280, 286 (6th Cir. 2007) (citing *Bruton*). Petitioner appears to be asserting that the introduction of statements Dawkins made to Story, which implicated Young, amounted to a *Bruton* error. Petitioner may also be asserting that, by the same token, the introduction of the recordings reflecting the intercepted telephone calls also violated *Bruton.*

The Sixth Amendment to the U. S. Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." Testimonial hearsay is admissible against a criminal accused, so long as the prosecution demonstrates "that the declarant is unavailable to serve as a witness, and that the accused had a prior opportunity to cross-examine the declarant. " *Id.* at 286 (citing *Crawford v. Washington*, 541 U.S. 36, 54-54 (2004)). The threshold question in resolving a Confrontation Clause claim is "whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *Id.* at 286 (quoting *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004)).

First of all, the Sixth Circuit has held that the Confrontation Clause only applies to testimonial hearsay. *United States v. McGee*, 529 F.3d 691, 697 (6th Cir. 2008). Courts have concluded that Title III wiretap recordings, which are surreptitiously obtained, are not testimonial in nature and, thus, do not violate the Confrontation Clause. *United States v. Sine*,

493 F.3d 1021, 1035 n.11 (9th Cir. 2007) (Admission of wiretap tapes did not violate Confrontation Clause because they were nontestimonial); *United States v. Hendricks*, 395 F.3d 173, 181 (3d Cir. 2005) (Same). Because the wiretap evidence was not testimonial, its admission did not violate petitioner's Sixth Amendment right to confront.

Statements made in furtherance of a conspiracy likewise are nontestimonial, "as the one making them has no awareness or expectation that [those] statements may later be used at a trial." *Mooneyham*, 473 F.3d at 286 (internal quotation marks and citation omitted). "[S]tatements which identify the participants and their roles in the conspiracy are made 'in furtherance' of a conspiracy," *United States v. Clark*, 18 F.3d 1337, 1342 (6th Cir. 1994), so long as the conspiracy is ongoing at the time the statement is made. *United States v.Conrad*, 507 F.3d 424, 430 (6th Cir. 2007) (observing that "out-of-court statements made after the conclusion of the conspiracy are not made 'in furtherance of the conspiracy,' and are thus not admissible under the co-conspirator exception"). The statement (i.e., that Dawkins told Story that Jeremy" was Young) was made while Dawkins and Story were in pretrial detention on these pending federal criminal charges, after the conclusion of the conspiracy. *Id.* Therefore, the statement does not fall within the co-conspirator's exception.

Even so, the statement was elicited by defense counsel during his cross-examination of Story. It has been held that where a defense counsel elicits through cross-examination information which is later challenged as being admitted in violation of an accused's right to confront, there is no Confrontation Clause violation. *United States v. McKenzie*, 532 Fed. Appx. 793, 797 (10th Cir. Aug. 12, 2013) (citing *United States v. Parikh*, 858 F.2d 688, 696 (11th Cir.1988)); *United States v. Magloire*, 235 Fed. Appx. 847, 850, 2007 WL 1073072, *3 (3d Cir. April 11, 2007).

Accordingly, even if counsel had moved to sever Dawkins's trial from petitioner's and had based the motion on the alleged *Bruton*/Confrontation Clause errors, that motion would not have been successful because there were no errors in the admission of the evidence. Story would still have been able to offer testimony against Young and the wiretap evidence relating to Young could still have been used. Counsel thus did not render a prejudicial performance in violation of the Sixth Amendment in failing to file a motion to sever.

### e.   Counsel Failed to Move for a Acquittal Based on Insufficiency of the Evidence[3]

Young maintains that counsel should have objected to Story's testimony in which he stated that, while he and Dawkins were both detained in the county jail, Dawkins identified Young as "Jeremy" and told him of conversations he [Dawkins] had with Young concerning illegal activities. According to Young, his counsel called Dawkins as a defense witness after the Government rested its case, but Dawkins's counsel informed the Court that his client would invoke his Fifth Amendment privilege against self-incrimination and would refuse to testify. Indeed, when the Court was inquiring into the matter, Dawkins stated, "I plead the 5th, Your Honor," [Doc. 360, T. Tr., vol. IV at 51].

As the Court discerns petitioner's argument, Dawkins's refusal to testify meant that the government had not presented evidence sufficient to convict Young—a situation which should have prompted Young's attorney to move for a judgment of acquittal. Young also makes an argument that, as an additional basis to support a motion for an acquittal, counsel should have challenged the sufficiency of evidence as to the amount of drugs involved in the offense.

---

[3]     Petitioner's discussion of this claim is not confined to one section of his brief, but spills over into other sections as well, [Doc. 476 at 9-11]. Petitioner also asserts that the evidence of the drug amount was insufficient as well—an assertion which will be discussed within Young's general challenge to the sufficiency of evidence

This claim appears to be rooted in Young's direct appeal, where the Sixth Circuit explained that, due to counsel's failure to move for a judgment of acquittal at trial, the sufficiency of the evidence would depend upon whether the record was "devoid of evidence pointing to guilt, such that a manifest miscarriage of justice occurred." *Young*, 347 Fed. Appx. at 187 (internal quotation marks and citation omitted). The Sixth Circuit first explained that sufficient evidence to sustain a conviction exists, if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime." *Id.* The Court of Appeals then turned to the elements of the offense, which included "(1) an agreement to violate the drug laws and (2) each conspirator's knowledge of, intent to join, and participation in the conspiracy." *Young*, 347 Fed. Appx. at 187-88.

The Court of Appeals next detailed the evidence against Young, which consisted of Story's identification of Young as his South Carolina supplier of cocaine, Story's testimony as to the amount of drugs Young would furnish (i.e., 9 to 18 ounces, three or four times a week), and the identification of Young's voice on the intercepted conversations making arrangements to buy drugs. After rejecting any challenge to Story's credibility or the amount or weight of the evidence as non-cognizable issues in a review of a sufficiency claim, the Sixth Circuit concluded that Young's conviction was not a manifest miscarriage of justice because it was supported by some evidence.

Petitioner's suggestion that his attorney's failure to move for a judgment of acquittal subjected him to a more onerous standard of review on direct appeal is beside the point. The issue to be determined is whether counsel's performance was deficient and whether an error on the part of trial counsel "undermined confidence in the outcome of the trial, not . . . whether trial

counsel's error resulted in an unfavorable standard of review on appeal." *United States v. Busch*, 411 Fed. Appx. 872, 876-877, 2011 WL 559151, *3 (6th Cir. Feb. 17, 2011).

As noted, the Sixth Circuit, citing to the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), found that the evidence was sufficient to sustain petitioner's conviction. *See generally, United States v. Vasquez*, 560 F.3d 461, 469-70 (6th Cir. 2009) (reviewing evidence under standard in *Jackson*, despite defendant's failure to move for a judgment of acquittal). The basis of a motion for a judgment of acquittal, under Rule 29 of the Federal Rules of Criminal Procedure, would have had to rest on the government's failure to produce sufficient evidence to establish the elements of the conspiracy, to wit, that there was an agreement to violate the drug laws, that Young had knowledge of the conspiracy, and that he possessed the intent to participate and had participated in the conspiracy.

Given the Sixth Circuit's resolution of the insufficient-evidence issue, this Court necessarily concludes that, since the convicting evidence was sufficient as to proof on each element of the offense, had counsel moved for a judgment of acquittal, the motion would have failed. This conclusion likewise resolves petitioner's next claim of ineffective assistance, (i.e., "Failure to Object/Insufficient evidence of drug quantity").

Because a motion for acquittal would not have been granted, counsel did not give a prejudicial performance by failing to make that motion. *Greer v. Mitchell*, 264 F.3d at 676.

### f. Counsel Failed to Object to Jury Instructions on Drug Quantity

In his next claim, Young maintains that counsel failed to request that the jury be instructed that it must find the drug quantity attributable to each individual defendant and not to the conspiracy as a whole. Petitioner asserts that counsel requested that the Court exclude lesser included offenses from the jury charge, but that when the government objected and conceded

24

that proof was lacking as to the threshold amount of five kilograms, the jury was instructed that it could consider guilt if the evidence showed that the overall scope of the conspiracy involved five kilograms or more of cocaine. Therefore, counsel committed an error by failing to request that the jury be charged that it must determine the specific quantity of drugs attributable to each individual defendant and allowing it to be instructed concerning the amount of cocaine involved in the entire conspiracy.

The Sixth Circuit has rejected this argument. The focus of 21 U.S.C. § 841(b)(1)(A) is" on the threshold quantity involved in the entire conspiracy." *United States v. Robinson*, 547 F.3d 632, 640 (6th Cir. 2008). The "relevant quantity determination" for a violation of 21 U.S.C. § 841(a) "is of the quantity involved in the conspiracy to distribute cocaine." *Id*. at 638. A district court's instruction to determine the quantity of cocaine "involved in the conspiracy" tracks the language of the statute and, therefore, is not an improper instruction. *Id*. at 637 and 640. A jury's finding that the quantity equaled or exceeded the threshold amount of five kilograms triggers a mandatory life sentence for a defendant who has two prior felony drug convictions, as did petitioner. *Id*. at 638.

Therefore, the Court "had no occasion to determine the amount . . . of drugs for which [Young] was personally responsible because there was no range within which the [C]ourt had discretion to choose a sentence, [since] the quantity of cocaine involved in the conspiracy and [Young's] prior felony drug convictions triggered a mandatory life sentence." *Id*. at 640. Accordingly, because an instruction to the jury to determine the amount of cocaine for which petitioner was personally responsible would have been unwarranted, counsel did not give ineffective assistance by failing to request that instruction.

**g. Counsel Failed to Object to Improper Comments**

In the instances which follow, according to petitioner, the prosecutor engaged in misconduct.

*i. Closing Argument*

The first listed instance of misconduct occurred during the prosecutor's closing remarks when she commented that Story, who was "apparently fond of white females," was "not a nice person" and was a "drug dealer," but that he was "the one who's got the best information about how this operation worked," [Doc. 361, T. Tr. at 73-74]. Young asserts that this was not proper argument, was not in response to any remark made during defendants' closing arguments, injected the issue of race into the jury determination, and inflamed the passions of the jury. Counsel's failure to object to this impermissible argument, so claims petitioner, denied him a fair trial.

The United States suggests that the remark was a fair response to defense counsel's portrayal of Story as a disreputable man who abused the women in his life, did not implicate or reflect poorly on petitioner, but merely acknowledged Story's apparent racial preference in women. The United States further argues that, even if the comment was improper, it was not flagrant and did not deny Young a fair trial and that counsel's failure to object to it did not constitute ineffective assistance.

The Court does not write on a blank slate here. This comment was raised in Dawkins's direct appeal as an issue and the Sixth Circuit found that the prosecutor was not responding to an argument by the defense that referenced the race of the women involved and thus was improper. *Young*, 347 Fed. Appx. at 191. The Sixth Circuit also found that the remark did not warrant any relief for Dawkins.

*Darden v. Wainright* establishes that the applicable question when a prosecutor's remarks are challenged is "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. 168, 180 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S. Ct. 1868, 40 L.Ed.2d 431 (1974)); *see also Parker v. Matthews*, ___ U.S.___,___, 132 S.Ct. 2148, 2153, 183 L.Ed.2d 32 (2012). A prosecutor's arguments which are undesirable or "even universally condemned' will not give rise to relief unless they deny a petitioner a fundamentally fair trial and thereby violate his right to due process of law. *See Darden*, 477 U.S. at 180.[4]

As noted, the Sixth Circuit held that the prosecution's remark concerning its key witness's racial preference in romantic partners did not have the required impact of denying Dawkins a fundamentally fair trial. This holding was based on the reasoning that the remark was isolated, that it did not refer to defendant Dawkins, that there was no evidence that the prosecutor was deliberately interjecting race into the proceedings, and that the evidence against defendant Dawkins was overwhelming.

Some of the same reasoning applies to Young's claim. The comments were directed towards Story, not petitioner, and the comment mentioning race was a single isolated remark. *See Donnelly*, 416 U.S. at 645 (characterizing a challenged remark as "but one moment in an extended trial"). Petitioner has produced no proof that the prosecutor was misstating or manipulating the evidence, or that her comments implicated other specific rights guaranteed to a criminal accused, such as the right to counsel or to keep silent. *See Darden*, 477 U.S. at 181-82.

---

[4]     Respondent points to *United States v. Henry*, 545 F.3d 367 (6th Cir. 2008) as containing the standard for evaluating claims of a prosecutor's misconduct, but this " elaborate, multistep test," according to the Supreme Court, is a misapplication of the legal precedent established in *Darden* . Hence, this Court will apply the rationale in *Darden* for determining whether a constitutional error occurred. *Darden*, 477 U.S. at 181-83.

Indeed, the "not nice" and "drug-dealer" remarks were made in response to the defense attorneys' closing arguments, which obviously were intended to undermine Story's credibility and character, [Doc. 361, T. Tr. at 21-69]. *See id*. at 182 (Depicting a remark as an "invited response" serves as a means of evaluating its impact on the trial as a whole. *Ibid.*). Furthermore, the Court instructed the jury "to base [its] verdict solely on the testimony and evidence in the case" and that "statements, objections, or arguments made by lawyers are not evidence in this case" and were "not binding on the jury," [Doc. 361, T. Tr. at 83 and 85]. *Ibid*.

The evidence included Story's testimony pointing to petitioner as his source of cocaine in South Carolina and indicating that the frequency of the supply of drugs from this source was three or four times a week and that the amount of drugs involved was nine to eighteen ounces. Other testimony and evidence were presented to show that it was petitioner's voice on the intercepted cell phone conversations making drug-transaction arrangements. While the evidence cannot be described as overwhelming, it was robust and it did reduce the likelihood that the jury was swayed by the prosecutor's remark describing the race of Story's romantic liaisons.

The Court finds that these comments did not deny Young a fair trial and counsel did not render a prejudicial performance in failing to object to them.

### ii. Post-Arrest Silence

### (a) Self-Incrimination

The next alleged impropriety on the part of the prosecutor occurred when she commented indirectly on Dawkins's post-arrest silence. During her opening argument, the prosecutor told the jury that it would hear directly from Story that he had two sources of supply for cocaine and that one of the sources was Young. Yet, during Story's testimony, he denied that he knew Young and acknowledged that he had never witnessed any of Dawkins's alleged drug dealings

28

with Young. When Young called Dawkins to testify, Dawkins declined, citing his Fifth Amendment privilege not to incriminate himself. Thereafter, during closing argument, the prosecutor cited Story's testimony about what Dawkins told him of Young's involvement in supplying him with cocaine and stated that "Terry Dawkins and [Story] made trips to South Carolina and they met and received drugs from Connie Young . . ." Young's claim, as the Court interprets it, is that these comments reflected on Dawkins's assertion of his right not to incriminate himself, as secured by the Fifth Amendment to the U.S. Constitution.

The Fifth Amendment provides that "[n]o person shall be ... compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The privilege against self incrimination is a personal right. *United States v. White*, 322 U.S. 694, 698 (1944) ("The constitutional privilege against self-incrimination ... is designed to prevent the use of legal process to force from the lips of the accused individual the evidence necessary to convict him . . . ."). This means that Dawkins himself can assert his right to remain silent when he is called as a witness and can complain of a violation of that right if his assertion of the right is used against him at trial. *Combs v. Coyle*, 205 F.3d 269, 286 (6th Cir. 2000) ("[T]hat a defendant's silence cannot be used as substantive evidence against him at trial is a fundamental aspect of the privilege.").

However, because the "Fifth Amendment privilege against self-incrimination is a privilege personal to the witness" and because "it is not the property either of his attorney or of the defendant on trial," *United States v. Mayes*, 512 F.2d 637, 649 (6th Cir. 1975), petitioner may not vicariously assert Dawkins's privilege. This is so because "[c]ompulsion upon the person asserting it is an important element of the privilege," *United States v. Mayes*, 512 F.2d 637, 649 (6th Cir. 1975), and there was no "compulsion" used against petitioner (or Dawkins for

29

that matter) with respect to the prosecutor's argument. This claim, as petitioner has phrased it and as the Court understands it, has no merit.

(b) <u>Shift in Theories/Fatal Variance</u>

However, as respondent interprets Young's allegations, his intended claim is that the prosecutor advised the jury, during her opening statement, that it would hear "directly" from Story about his cocaine suppliers—a comment which was understood by petitioner to indicate that Story would testify that he personally received cocaine from Young. At trial, Story testified that Dawkins arranged the cocaine purchases with Young and that Dawkins and Story together obtained the cocaine, but he also made it clear that he had "made no hand-to-hand drug sales" with Young, [Doc. 360, vol. IV, T. Tr., Testimony of Rickey Story at 14]. In her closing summation, the United States's attorney pointed to that evidence (viz., proof which showed that Dawkins made arrangements for Story and himself to obtain cocaine from petitioner) as establishing that petitioner had committed the cocaine conspiracy offense.

Young now maintains that the prosecutor's closing comments represent a shift in theories from those she made in her opening statement and amounted to a "fatal variance." Young further claims, albeit in passing, that "the prosecutor misstated the evidence," [Doc. 476, Pet'r's Br. at 15].

In her opening statement, the prosecutor remarked that the jury would "here (sic) from him [referring to Story] directly that he was having - - he had two sources of supply, more or less, to obtain his cocaine powder" and that one of the sources "is an individual Connie Jermaine Young, referred to as 'Jeremy," who was in South Carolina," [Doc. 357, vol. I, T. Tr. at 8 ]. At trial, Story testified that he and Dawkins went to South Carolina and obtained drugs from Young, and that, while he was not introduced to Young, he had seen him in person and heard

him speak, [Doc. 359, vol. III, T. Tr. at 95-96, 107]. Story also identified Young's voice as a participant in wiretapped conversations in which Dawkins arranged to buy drugs and Story likewise identified Young as the "Jeremy" to whom Dawkins referred and from whom Dawkins was arranging to pick up drugs, [*Id*. at 105-06].

In her closing argument, the prosecutor summarized the evidence against Young, which included Story's identification of Young as the person whose voice was heard on intercepted phone conversations making plans with Dawkins to provide Dawkins with drugs, Story's testimony involving the trips he and Dawkins made to South Carolina to obtain drugs from Young, and other evidence of the trips, such as the traffic ticket issued as the duo returned to Johnson City from picking up drugs in South Carolina. The recounting of the evidence also included a corroborating phone call Dawkins later made to "Jeremy" to tell him about the traffic stop. The prosecution's stated theory was this: that "Terry Dawkins and [Story] made trips to South Carolina and they met and received drugs from Connie Young," and that Young "participated with [Story] in his conspiracy to distribute cocaine and crack," [Doc. 361, vol. V, T. Tr. at 79-80].

The record does not support that there was any variation between prosecutor's opening statement explaining the nature of the proof to be adduced at trial and her closing summary of the proof which had been presented at trial. Nor has the Court detected any shift between the prospective proof, as mentioned in the prosecutor's opening statement, and the actual proof presented at trial, or in the summary of the proof as contained in the prosecutor's closing argument. If there was any shift in the proof, which the Court has not discerned, it was slight.

Moreover, even if petitioner understood the word "directly" to mean that Story would testify that he obtained cocaine directly from Young, his misapprehension as to the meaning of

the word does not transform an accurate description of the potential and actual proof by the prosecutor into a misstatement of the evidence. There was no misstatement of evidence to which counsel could have objected.

Furthermore, a fatal variance focuses on whether "the *evidence* adduced at trial establishe[d] facts different from those alleged in an indictment." *United States v. Heimann*, 705 F.2d 662, 667 (2d Cir. 1983) (quoting *Dunn v. United States,* 442 U.S. 100, 105, 99 S.Ct. 2190, 2193, 60 L.Ed.2d 743 (1979)) (emphasis added in original). Here, petitioner's allegation is that the prosecutor's opening statement varied from her closing argument, but "an advocate's arguments to a jury surely do not qualify as 'evidence.'" *Id*.

Put simply, Young's presumed claim does not fit within a "fatal variance" framework and, thus, the prosecutor's arguments, which did not create a fatal variance, did not amount to misconduct. If there was no misconduct to which counsel could have objected, he did not render ineffective assistance by failing to do so.

### iii. *Jury Instructions Modified and Broadened*

In the midst of his statement of his prosecutorial-misconduct claims, Young inserts a claim that he was denied a fair trial when jury instructions were modified and broadened by adding the words "directly or indirectly" and "and/or" to the part of the charge on the elements of the conspiracy. Yet petitioner does not indicate how these purported additions or modifications violated his rights to a fair trial or offer any argument whatsoever to show how the claimed modifications worked to broaden the indictment or otherwise to violate his right to due process of law. Therefore, this allegation is conclusory, as it does not state the facts supporting it, *see* Rule 2, Section 2255 Rules, and entitles petitioner to no relief. It therefore follows that Young has not established that he received ineffective assistance from counsel in this regard.

### h. Counsel's Advice Concerning Whether to Accept or Reject Plea Offer

In his last ineffective assistance claim, Young maintains that, while discussing the evidence, counsel advised him that the government had no physical evidence and that, without five kilos, he could not be convicted of the indicted offense at trial. Petitioner also alleges that counsel did not advise him that he would be subject to a mandatory life sentence if he were convicted. Young asserts that, based on this advice, he went to trial and was convicted of a cocaine offense involving five kilograms, even though the government did not present the five kilograms of cocaine at the trial. Following the trial, petitioner obtained from his appellate counsel a copy of a plea offer—an offer of which he was never advised by counsel. Nor, according to petitioner, did counsel give him competent advice on whether to proceed to trial.

Young never alleges that he would have accepted the plea offer, though he does maintain that the disparity between the life sentence he received following the trial and the 46-57 months' term of imprisonment he would have received had he accepted the offer is sufficient to establish a reasonable probability that a properly informed and advised defendant would have accepted the prosecution's offer.

The United States counters that petitioner has offered no allegations of fact to support his claim—an omission which results in the claim being conclusory. Conclusory claims, respondent explains, do not warrant relief. The Court understands respondent to be suggesting that Young has failed to describe the plea agreement or to specify the terms in the proposed agreement. Even so, respondent points out that Young does not allege that he would have pleaded guilty had he been competently counseled to do so and that, without such an allegation, he has not demonstrated that counsel's advice "caused nonacceptance of a plea offer," as required by *Lafler v. Cooper*, 132 S. Ct. 1376, 1883 (2012).

The United States has attached to its response the affidavit of Young's trial attorney, Wayne R. Stambaugh, [Doc. 544-1, Affidavit of Wayne R. Stambaugh]. Attorney Stambaugh avers, in his affidavit, that he engaged in numerous conversations with his client regarding his decision to go to trial and his possible sentence if convicted, that he reviewed with Young every element of the charged offense, and that he advised Young that, based on his serious criminal record, he was facing a potential life sentence if he were to be convicted.

Stambaugh further testifies in his affidavit that he advised Young to plead guilty to count one of the Superseding Indictment, but that Young, who was a sophisticated criminal client with a previous federal drug conviction and who had an intimate familiarity with the U. S. Sentencing Guidelines and with theories of defense in drug conspiracy cases, repeatedly declined to accept the plea agreement. According to the affidavit, Young's rejection of the plea agreement and his decision to go to trial were based on his vain belief that Story would not testify against him at trial.

A criminal defendant "has a right to be informed about the plea agreement, and counsel's failure to notify his client of a prosecutor's plea offer constitutes ineffective assistance of counsel." *United States v. Wynn*, 663 F.3d 847, 851 (6th Cir. 2011) (internal citations and quotation marks omitted). For example, an attorney gives ineffective assistance where a formal plea offer is made, but not conveyed to a client, or if conveyed to the client, rejected based on incorrect advice by counsel, and where further proceedings lead to a less favorable sentence. *Lafler*; *Missouri v. Frye*, 132 S. Ct. 399 (2012).

Young refers the Court to exhibit J to show that he was offered a guilty plea agreement, but that document is entitled, "Agreed Factual Basis," and the text of that document relates that it was submitted "in addition to a plea agreement"—a plea agreement which Young has not filed

and which is not in the record. Interestingly, the individual who is listed as Young's attorney at the bottom of the "Agreed Factual Basis" document is not Mr. Stambaugh, but Carey Taylor. Nonetheless, all parties agree that Young was extended a plea agreement and the Court accepts that he was.

As noted, Stambaugh testifies in his affidavit that, though he advised petitioner to accept the plea agreement offered by the government, petitioner rejected that advice and repeatedly declined to accept the plea agreement. Petitioner filed what he titled as "affidavit," which, though not notarized, was signed under penalty of perjury. Young's affidavit, which was filed before the Stambaugh affidavit, does not discuss or even address the issue of counsel's alleged failure to convey the governments's plea offer to him, [Doc. 476-1]. Though Stambaugh testifies, in his affidavit, that Young rejected the plea agreement "repeatedly," petitioner did not avail himself of the opportunity to submit an affidavit to the contrary.

The Court presided over this case, had the opportunity to observe counsel's presentation of Young's defense, and well remembers what transpired at the trial. Attorney Stambaugh has practiced for many years in this Court, his experience and professionalism is apparent, and he is fully believed by the Court. Therefore, on the basis of credibility, the Court would find this claim of ineffective assistance to be groundless.

But there are reasons in addition to credibility for the Court to so find, namely that petitioner has not carried his burden of showing that he received ineffective assistance in this instance. This is so even if the Court assumes, for the sole purpose of resolving this claim, that counsel failed to convey the plea offer to Young, as it then follows that petitioner has shown deficient performance on the part of his attorney, as explained in *Frye*. *Id*., 132 S. Ct. at 1409; *accord Griffin v. United States*, 330 F.3d 733, 738 (6th Cir. 2003) ("A defense attorney's failure

to notify his client of a prosecutor's plea offer constitutes ineffective assistance of counsel under the Sixth Amendment and satisfies the first element of the *Strickland* test.). It therefore becomes incumbent on Young to show prejudice flowing from that deficiency.

Prejudice, in this context, requires petitioner to show that there is a reasonable probability that he "would have accepted the [unconveyed] plea offer and the prosecution would not have withdrawn it in light of intervening circumstances, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler,* 132 S.Ct. at 1385 (internal parentheses omitted).

Young has failed to show prejudice. First of all, petitioner does not expressly assert that he would have accepted the plea offer if he had known about it. Instead, he merely cites to three Sixth Circuit cases for the proposition that "a substantial disparity between the penalty offered by the prosecution and the punishment called for by the indictment is sufficient to establish a reasonably probability that a properly informed and advised defendant would have accepted the prosecutions (sic) offer," [Doc. 476, Pet'r's Br. at 16]. The Court finds that the cited cases do not help Young because they are factually distinguishable from his case.

In the first cited case, *Dedvukovic v. Martin*, 36 Fed. Appx. 795 (6th Cir. 2002) (unpublished), the Sixth Circuit held "that the district court did not err in relying on such a disparity, along with the unrefuted testimony of the petitioner to support its conclusion that habeas relief was required in this case." *Id*. at 798. Here, Young has not testified that he would have taken the offer, and the uncontradicted testimony of Attorney Stambaugh establishes that, time after time, Young rejected the offer.

In *Griffin v. United States*, the next case relied upon by petitioner, the Sixth Circuit found it significant that the petitioner had asserted that he would have accepted the plea if he had known of the offer and of his "potential sentencing exposure" and that he was unaware "that his codefendants were going to testify against him in exchange for substantially lesser sentences." *Id.*, 330 F.3d at 738-739. These things, along with the disparity between the sentence petitioner received and the one he would have received under the plea bargain, persuaded the Sixth Circuit that an evidentiary hearing was warranted to determine whether there was a reasonable probability that he would have accepted the plea had counsel communicated the offer to him. *Id.* at 739.

The facts in petitioner's case are different. Young does *not* assert that he would have accepted the plea had counsel conveyed the government's offer to him. And there is evidence in Attorney Stambaugh's affidavit that Young was advised of and was aware of his possible life sentence, if he were convicted of the criminal charge. Moreover, Young was aware that Story would serve as a prosecution witness against him at trial. While petitioner may have truly believed that Story would ultimately refuse to testify against him or would testify falsely about petitioner's role in the drug dealing scheme, that belief is not enough. *See, e.g., United States v. Paul*, 853 F.2d 308, 311 (5th Cir.1988) (no constitutional violation even if a defendant's guilty plea is based on his "mistaken subjective belief," which was not created or condoned by federal authorities). Logic compels the conclusion that petitioner first would have to have known that the prosecution would call Story to testify, before he could have reached a belief about the giving of that testimony.

The last citation offered in support is an unpublished opinion, *Dabelko v. United States*, No. 98-3247, 200 U.S. App. LEXIS 9633 (6th Cir. May 3, 2000), in which the Sixth Circuit

determined that the district court's findings that the government was not interested in a plea bargain and that no plea bargain had been made or offered were in error. The case was remanded for an evidentiary hearing so that the petitioner "could show that the prosecution made him a specific plea bargain that he was ready to accept had he received effective assistance of counsel." *Id.*, 2000 U.S. App. LEXIS at *7.

In this case, the Court has already noted the existence of a guilty plea offer by the prosecution. The Court has further determined that petitioner has not alleged that he was ready to accept the offer. *Frye*, 132 S. Ct. at 1409 (To show prejudice, a petitioner "must demonstrate a reasonable probability [he] would have accepted the earlier plea offer" had it been conveyed to him.). Quite to the contrary, as found earlier, the evidence presented in defense counsel's affidavit discloses that Young repeatedly rejected the plea offer. Given the dissimilarity between the facts in *Debelko* and in petitioner's case, *Dabelko* provides no refuge for the proposition that a vast sentencing disparity, standing alone, is sufficient to show the requisite prejudice under the *Strickland* test.

Put simply, petitioner has failed to carry his burden of showing prejudice in a plea bargaining setting, under the standard detailed in *Lafler* and *Frye*. *See e.g., United States v. Marks*, 890 F. Supp.2d 248, 247 (W.D.N.Y. 2012) (finding no prejudice where a petitioner failed to establish a reasonable probability that he would have accepted the unconveyed offer) (listing cases). In the absence of this showing, Young has not demonstrated that he was given ineffective assistance with respect to the plea offer.

**B. Prosecutorial Misconduct**

The final claim alleged in the brief is that the prosecutor committed misconduct and denied Young a fair trial by failing: (1) to disclose favorable testimony of Terry Dawkins prior

38

to trial, (2) to disclose that Story, the key witness, was an informant and more than a cooperating witness, and (3) to disclose inconsistencies between a witness's trial testimony concerning the type of drugs being transported when a traffic ticket was received and her pretrial statement to officers. Citing to *Brady v. Maryland*, 373 U.S. 83 (1963), *Napue v. Illinois*, 360 U.S. 264 (1959), and *Banks v. Dretke*, 540 U.S. 668 (2004), petitioner characterizes this alleged misconduct as the suppression of evidence favorable to a defendant and the presentation of testimony known to be perjured.

The United States asserts, in its response, that these claims have been procedurally defaulted and thus cannot furnish a basis for relief. It also asserts, in the alternative, that the claims lack merit. After a review of the record, the Court finds the procedural default defense to be sound, with one caveat.

First, the caveat. The record shows that petitioner did pursue two of his *Brady* claims (the one involving Story's role as an informant, rather than as a cooperating witness, and the one involving Dawkins's "affidavit" in which he states that he told government agents before trial that he did not know Young) by including them in a motion for a new trial and, when this Court denied the motion, in a direct appeal of that denial, [Doc. 508, *United States v. Young*, Nos 11-5477/5692, (6th Cir. Feb. 2, 2012) (unpublished order). The Sixth Circuit found no merit in the claims.

Thus, petitioner's continued pursuit of these specific claims is nothing more than a thinly disguised effort to relitigate those particular claims. Young may not use a § 2255 motion to relitigate issues raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law. *DuPonte v. United States*, 76 F.3d

39

108, 110-11 (6th Cir. 1996). There are no highly exceptional circumstances here. These claims lacks merit.

As to the remaining claim, the law is settled that a claim not presented on appeal when it could have been presented may not be reviewed in a § 2255 motion, absent a showing of cause and actual prejudice to excuse a failure to raise the claim previously. *Bousley v. United States,* 523 U.S. 614, 619 (1998); *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). Petitioner could have challenged the prosecutor's conduct, including the purported withholding of favorable evidence and the knowing use of false testimony on direct review, a proceeding which offered him an adequate and effective means for testing his arguments as to these claimed illegalities.

This claim was not raised on direct appeal and has been procedurally defaulted. However, Young may still obtain review if he can demonstrate cause and prejudice to overcome the procedural default.

Cause for a procedural default may be shown where counsel rendered ineffective assistance in violation of the prisoner's right under the Sixth Amendment, or where the legal or factual basis of a claim is not reasonably available at the time of the procedural default. *Murray v. Carrier*, 477 U.S. 478, 488, 492 (1986). A petitioner demonstrates prejudice by establishing that the constitutional error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Courts are entitled to presume, once a direct appeal has been decided, that a defendant "stands fairly and finally convicted," and thus, absent a showing of "cause and actual prejudice," raising a claim pursuant to § 2255 will not substitute for raising the claim on direct appeal. *Id.* at 164-65; *accord Elzy* 205 F.3d at 884.

40

Because the remaining claims of prosecutorial misconduct were not raised on direct appeal and because Young has offered no showing of either cause and prejudice or actual innocence, review of these claims is now foreclosed by his procedural default. *Bousley,* 523 U.S. at 619; *Elzy*, 205 F.3d at 884.

## V. Conclusion

For the reasons set forth above, the Court holds that petitioner's convictions and sentencing were not in violation of the Constitution or laws of the United States. Accordingly, his motion to vacate, set aside or correct his sentence under to 28 U.S.C. § 2255 will be **DENIED** and his motion **DISMISSED**.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id*.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Having examined each of the petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability as to each claim raised.

41

A separate judgment will enter.

**ENTER**:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE