UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

CONNIE J. YOUNG, )
)
    Petitioner, )
v. ) Nos. 2:11-CV-08-JRG;
)        2:06-CR- 20-JRG-MCLC-4
UNITED STATES OF AMERICA, )
)
    Respondent. )

**MEMORANDUM OPINION**

    This pro se federal prisoner's motion to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255 was remanded to this Court by the Sixth Circuit for the purpose of determining whether Petitioner's attorney, Wayne Stambaugh, gave him ineffective assistance in two instances: (1) by failing to advise him of a plea offer and (2) by incorrectly advising him that the government could not obtain a drug conspiracy conviction without displaying to the jury the physical evidence of the drugs [Doc. 599];[1] and, therefore, without demonstrative evidence of the cocaine, the prosecution could not prove the existence of the five kilograms of cocaine charged in the indictment [*Id*. p3]. To resolve the claims of ineffective assistance, the Court scheduled an evidentiary hearing and appointed counsel to represent Petitioner at the hearing [Doc. 601].

    Prior to the scheduled evidentiary hearing, Petitioner filed a motion to appoint new counsel and appointed counsel moved to withdraw [Docs. 604, 612 (sealed)]. A hearing was held before the magistrate judge to inquire into the matter, but the problems which prompted the respective motions were not resolved at the hearing [Doc. 610].

---

[1] All citations to the record refer to Petitioner's criminal case file, No. 2:06-CR-20.

The evidentiary hearing was convened on January 15, 2016. Petitioner indicated that, based on a discussion with his appointed counsel that morning, he wished to withdraw his pro se motion to appoint new counsel. Counsel also moved to withdraw his motion and both motions were granted [Doc. 613]. The evidentiary hearing continued without any further glitch, and Petitioner's appointed counsel continued to represent Petitioner at the evidentiary hearing.

The Court assumes familiarity with Petitioner's case and discusses only the issues currently under review.

## I. EVIDENTIARY HEARING TESTIMONY

Mr. Stambaugh testified at the January 15 evidentiary hearing and Petitioner testified on March 4, 2016, after the evidentiary hearing was continued to afford appointed counsel additional time to consult with Petitioner.

Mr. Stambaugh testified that he had been appointed to serve as Petitioner's counsel after the death of Carey Taylor, Petitioner's previous attorney, and that he had received Petitioner's file, including discovery materials, from the deceased attorney's estate some three weeks after his appointment [Doc. 617, January 15, 2016, Evidentiary Hearing Transcript pp. 25, 31, 36]. Mr. Stambaugh stated that he met with Petitioner three times in the first month following the appointment, eight times prior to the trial, and two times post-trial and that it was obvious that Petitioner had met with Mr. Taylor, since Petitioner knew about the discovery in his case and was aware of the allegations lodged against him [*Id*. at 18, 35-36]. Counsel related that his client did not believe himself to be guilty and did not believe that he could be convicted since the majority of witnesses did not know his identity. Petitioner understood that the entire case would rest on the testimony of the leader of the conspiracy, Rickey Story [*Id*. at 18-19].

Mr. Stambaugh testified that that he was only aware of one plea agreement offered by the

government, which he had gone over with his client, that his client had rejected the plea deal, and that his client, in response to the plea offer, had remarked that if he [Petitioner] was going to do 17 years, he would just do life and go to trial [*Id*. at 21-23]. Mr. Stambaugh was unequivocal in stating that he had only discussed one plea agreement, that he remembered going over one plea agreement, that all he recalled was "this one particular plea agreement," and that he did not remember there being another plea agreement or going over another plea agreement, though he acknowledged that he did not know what Petitioner "might have gone over with Carey Taylor" [*Id*. at 21, 23, 24].

The plea agreement, as Mr. Stambaugh remembered it, was an agreement to plead guilty to conspiracy to distribute or possess with the intent to distribute 500 grams or more of cocaine, a lesser included offense—described as an "841(b)(1)(B)" offense, rather than the one with which he was charged in the indictment [*Id*. at 24, 27-30]. Mr. Stambaugh stated that Petitioner had had a prior federal drug conviction, was a very sophisticated client, knew the sentencing guidelines very well, and knew all the statutes under which he was charged [*Id*. at 29]. Mr. Stambaugh testified that he and his client discussed the sentencing guidelines, and specifically discussed the possible enhancements, the Career Offender Guideline range, the mandatory life sentence he faced if convicted, and that he did not have to be involved personally in distributing the five kilogram amount charged in the indictment [*Id*. at 23, 28-29, 31]. Attorney Stambaugh said that he had advised Petitioner to accept the plea agreement, but that Petitioner wanted to proceed to trial and that he had desired to go to trial from the beginning [*Id*. at 23, 30-31]. Mr. Stambaugh stated that it had been Petitioner's "choice to proceed to trial" [*Id*. at 31].

Mr. Stambaugh testified that he had never advised a client that the government must produce the actual drugs at trial to sustain a conviction, that he had not told Petitioner that, if the

3

government could not produce the actual drugs at the trial, it could not get a conviction, that he had explained to Petitioner that the quantity of drugs charged in the conspiracy did not have to be brought into the courtroom and shown to the jury for Petitioner to be convicted of conspiracy, and that that his client "absolutely understood the concepts" [*Id.* at 25-26, 31, 36]. Mr. Stambaugh stated that Petitioner's "biggest issue" was a disbelief that anyone could identify him as playing a role in the conspiracy and that "no one did [identify Petitioner] until we got to Rickey Story," [*Id.* at 31].

Mr. Stambaugh reiterated that he distinctly remembered discussing with Petitioner an offer from the government to allow him to plead guilty to a § 841(b)(1)(B) offense with a quantity of more than 500 grams, specifically recalled Petitioner's comment that he would just as soon take his chance on a life sentence, rather than the 17-year prison sentence offered to him under the plea deal, and that he "absolutely, absolutely" discussed the possibility of a mandatory life sentence [*Id.* at 37-39.] Mr. Stambaugh stated that he was shocked by Petitioner's comment, given that he had explained to Petitioner that the plea deal would lower his mandatory life sentence to ten years [*Id.* at 30]. Mr. Stambaugh said that Petitioner refused to listen to his recommendation that he accept the plea agreement and that Petitioner rejected the plea agreement [*Id.* at 23, 30].

In contrast to Mr. Stambaugh's testimony, Petitioner stated, during his testimony on the second day of the evidentiary hearing, that he had not discussed a plea offer with Mr. Taylor, repeatedly denied discussing a plea offer with Mr. Stambaugh, and denied that Mr. Stambaugh had presented him with a proposed plea agreement [Doc. 619, March 4, 2016, Evidentiary Hearing Transcript pp. 10, 14, 17-18, 20, 25, 33]. Petitioner explained that the first time he knew about a proposed plea deal was about three months after the denial of his direct appeal, when he received his file from his appellate attorney and discovered that the file contained a plea agreement which,

4

according to Petitioner, had been communicated to Mr. Taylor [*Id*. at 10-11].[2]

Petitioner also testified about a letter that he received through a request under the Freedom of Information Act [*Id*. at 19]. In the letter, addressed to Mr. Stambaugh and submitted as Exhibit 1 at the evidentiary hearing, the prosecutor explains that she is "enclosing a slightly modified plea agreement" for Petitioner and that a clarification of evidence has warranted a reduction in the quantity of cocaine, from 806 grams to 639 grams, though the prosecutor observes that the amount of cocaine still is well above the 500 gram drug-quantity element of the offense.

Petitioner filed, as Exhibit 2, a document entitled "Plea Agreement," which states that the government and Petitioner have agreed that he will plead guilty to a violation of 21 U.S.C. § 841(b)(1)(B) for conspiracy to distribute and to possess with the intent to distribute 500 grams of more of a cocaine and that, due to his prior felony drug convictions, the penalty for the offense is a minimum mandatory sentence of ten years and a maximum of life.

Petitioner testified that he would have pled guilty to any one of three plea offers. Petitioner stated that he would have pled guilty to what he called the first plea offer, referring to the Agreed Factual Basis, see footnote 2, because it contained a proposal that the amount of cocaine involved in the conspiracy was 255 grams [*Id*. at 20]. Petitioner testified that he likewise would have pled guilty to the second plea agreement (referring to the letter, specifically the part of the letter

---

[2] Petitioner's reference to the undisclosed plea agreement purportedly offered to Mr. Taylor is to an unsigned document entitled, "Agreed Factual Basis," which was filed at the evidentiary hearing as Exhibit 6. A copy of the "Agreed Factual Basis" was submitted to and discussed by this Court during Petitioner's original section 2255 proceedings and, likewise, was submitted to and discussed by the Sixth Circuit in Petitioner's appeal of his collateral petition. According to the Sixth Circuit, Petitioner claimed, during his appeal, that the Agreed Factual Basis was provided to him "by the government in preparation for a plea deal" [Doc. 599 p.3]. However, Petitioner told this Court, during his sworn testimony at the evidentiary hearing, that he discovered the Agreed Factual Basis in the file his appellate counsel provided to him after his appeal was concluded [Doc. 619, March 4, 2016, Evidentiary Hearing Transcript p. 33]. No plea agreement accompanied the Agreed Factual Basis when it was filed originally in this Court, and likewise no plea agreement was offered when the document was submitted as Exhibit 6 during the evidentiary hearing.

5

mentioning a drug quantity of 806 grams of cocaine as a previously calculated quantity of drugs), knowing that the government already had increased the amount of drugs from 255 grams to 800 grams and fearing that he would be at risk of a further increase in the drug amount if he declined the plea offer [*Id.*]. Petitioner testified that he also would have accepted the third plea offer, the one "with the 600 gram offer" based on the government's reexamination of the evidence because that was likely to be the last plea offer he would receive from the prosecutor given that the trial date was imminent [*Id.*].

Petitioner testified that "'he' (Stambaugh) never conveyed any of those plea offers to me" and that "'he' never communicated none of the plea (sic), I never had a chance to make a choice on whether to accept any of those plea offers" [*Id.* at 20-21].[3]

Petitioner acknowledged that, after Mr. Taylor had been appointed to represent him, he had sought the opinion of another attorney, who had explained to him the value of being the first member of a drug conspiracy to enter into a plea bargain with the government and that he had followed that advice by writing a letter to Mr. Taylor, asking counsel to solicit a plea offer [*Id.* at 21-22]. Petitioner testified that he wrote Mr. Taylor a second letter to clarify that he would agree to a plea bargain only if the offer was for 250 grams, that, given his criminal history, any other plea would not be beneficial to him, and that he would have no other choice than to go to trial [*Id.* at 22].

Petitioner testified that his insistence on a plea offer of 250 grams was driven by his confusion as to "the difference between 500 grams and 5 kilo (sic)," that he did not know at the time he wrote the letter that an offer below 500 grams of cocaine would eliminate a minimum

---

[3] Petitioner's references to "he" are obviously to Mr. Stambaugh, since Petitioner testified that he met only once with Mr. Taylor and that Mr. Taylor died before they had any discussions involving a plea deal [Doc. 619, March 4, 2016 Evidentiary Hearing Transcript pp. 9, 28, 44-45].

6

mandatory sentence, and that he pursued a 250 gram offer because that was the amount of cocaine that he himself had sold [*Id.* at 22-24]. Petitioner acknowledged that he had been sentenced to a five-year mandatory minimum sentence for a prior federal drug charge involving 17 grams of crack cocaine but that he did not know at the time of the letter that a quantity of 500 grams of cocaine triggered a mandatory minimum sentence [*Id.* at 24-25].

Petitioner testified that he did not write a letter to Mr. Stambaugh asking for a plea agreement nor personally request or ask about a plea agreement because he had no contact information for his attorney; they only met four times prior to trial, with two meetings being five minutes at most; "it never crossed [his mind] to ask him," and "the time frame . . . went by so fast" [*Id.* at 25-26, 46-47]. Petitioner stated that he had written to Mr. Taylor asking for a plea agreement before he reviewed the evidence and that, upon reviewing and assessing the evidence, including listening to taped telephone calls and not identifying his voice on those calls, he and his attorney believed they could be successful at trial and could get the case against Petitioner "throwed (sic) out period", though he still would have accepted the plea agreement, had it been presented to him [*Id.* at 27-29, 49].

Petitioner also stated that Mr. Stambaugh told him that, unless the government had physical evidence of the cocaine, it could not convict him and that he believed what he was told [*Id.* at 30-31]. Petitioner stated further that he did not understand that the amount of cocaine alleged in the indictment made a difference with respect to a mandatory minimum sentence at the time he was charged with and was defending against the cocaine conspiracy charge because he "was fresh back in the system" and because he "always pled guilty" [*Id.* at 34].[4]

---

[4] To illustrate one reason underlying the credibility determinations concerning Petitioner's testimony which will follow in this opinion, attention is directed to the part of the transcript of the evidentiary hearing where Petitioner takes shifting positions as to whether he knew that mandatory

7

Petitioner explained that, when he wrote the letter to Mr. Taylor saying that he would only agree to a plea offer involving 250 grams of cocaine, he really meant that he would not plead to "5 kilos" but would accept an offer "between the 250 grams up to the 5 kilos" [*Id*. at 39]. Petitioner also testified that he did not know that his sentence could be increased due to his criminal history, that the magistrate judge did not mention that possible increase at Petitioner's initial appearance,[5] that Mr. Stambaugh never discussed sentencing with him until the time of sentencing, and that it was only at his sentencing that he realized he was facing a mandatory life sentence [*Id*. at 41-42].

## II. GOVERNING LAW

To obtain relief under § 2255 a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). Petitioner bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).

The Sixth Amendment secures to a criminal accused a right to counsel during postindictment plea negotiations. *Kennedy v. United States*, 756 F.3d 492, 493 (6th Cir. 2014) (citing *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009), and *Missouri v. Frye*, 132 S.Ct. 1399 (2012)). The right to

---

minimum sentences would apply if he were convicted of the § 841(b)(1)(A) offense [Doc. 619, Evidentiary Hearing Transcript pp. 34-35, 40—41, 43]

[5] The Court previously determined that the record showed that the magistrate judge advised Petitioner that his criminal history would impact his sentence adversely [Doc. 566, Order of August 11, 2014, rejecting Petitioner's contention that he did not know he faced a potential life sentence, based on the colloquy at Petitioner's initial appearance wherein the magistrate judge advised him: "If you're convicted, where you would fall within that big space of 10 to life depends a lot—one big thing would be your criminal history . . . but for right now at least I want you to understand the statutory minimum which is 10 years, up to the statutory maximum of life," p. 6-7].

8

counsel includes the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687(1984). To succeed on an ineffective assistance claim, a petitioner must show that counsel's deficient performance prejudiced the defense. *Id*. at 687.

In the context of an unconveyed plea offer, a petitioner satisfies the deficient performance prong of the *Strickland* test by showing that "the government extended a plea offer that [counsel] failed to communicate to him." *Guerrero v. United States*, 383 F.3d 409, 416 (6th Cir. 2004). Giving incorrect legal advice which reflects a misunderstanding of settled law can be deficient performance. *Cooper v. Lafler*, 132 S.Ct. 1376, 1384 (2012) (noting that "all parties agree the performance of respondent's counsel was deficient when he advised respondent to reject the plea offer on the grounds he could not be convicted at trial. . . .");[6] *Padilla v. Kentucky*, 559 U.S. 356, 360 (2010) (giving incorrect advice on deportation consequences of guilty plea was deficient performance).

To show prejudice, a petitioner "must demonstrate a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel." *Frye*, 132 S. Ct. at 1409. Where a petitioner rejects a plea offer due to ineffective assistance of counsel and is convicted at the ensuing trial, he shows prejudice by establishing that "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 132 S.Ct. at 1384.

### III. DISCUSSION

The Court addresses the two claims of ineffective assistance separately.

---

[6] In *Lafler*, counsel had informed his client of an incorrect legal rule by advising him "that he could not be convicted of assault with intent to commit murder because the bullets entered the victim's body below the waist." *Cooper v. Lafler*, 376 F. App'x 563, 570 (6th Cir. 2010), *vacated*, 132 S. Ct. 1376 (2012).

9

## A. *Lafler/Frye* Claim

For ease of discussion, the Court will refer to the document entitled, Agreed Factual Basis, as the first plea offer [Doc. 618, Minutes, March 3, 2016, Evidentiary Hearing, Ex. 6], to "slightly modified plea agreement," a "revised plea agreement" and an "earlier calculation of 806 grams"—terms contained in the prosecutor's letter to Mr. Stambaugh—as the second plea offer [Doc. 615, Minutes, January 15, 2016 Evidentiary Hearing, Ex. 1], and to the document entitled "Plea Agreement" as the third plea offer [*Id.*, Ex. 2].

### 1. First Plea Offer

The Agreed Factual Basis offered to prove a plea agreement is unsigned and undated. The document was submitted as an exhibit at the evidentiary hearing, but Petitioner did not produce a companion plea agreement to the Agreed Factual Basis—though the Agreed Factual Basis itself states that it "is submitted in addition to a plea agreement" [Doc. 618, Minutes, March 3, 2016, Evidentiary Hearing, Ex. 6]. Indeed, the prosecutor could find nothing in her records to indicate that the government made such an offer and, though she was somewhat equivocal as to whether she had authored the Agreed Factual Basis, she expressed that it made no sense to her whey she would have offered a plea to 500 grams of cocaine but pegged the amount of drugs at less than 500 grams [Doc. 619, March 3, 2016, Evidentiary Hearing Transcript p. 36]. It would require vast speculation to find that that a formal plea agreement about which the government knows nothing materialized from the Agreed Factual Basis obtained by Petitioner from his appellate counsel.

There is simply no solid evidence that a formal plea agreement existed and no explanation of the terms of such an agreement, if it existed. *See Frye*, 132 S Ct. at 1409 ("[T]he fact of a formal offer means that its terms and its processing can be documented so that what

10

took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations."); *United States v. Petters*, 986 F. Supp. 2d 1077, 1082 (D. Minn. 2013) ("While no hard-and-fast rule exists, *Frye* made clear that the presence of a writing is a crucial fact when determining whether a formal plea offer has been tendered by the Government."). Petitioner must first prove the existence of a plea agreement and he has not borne his burden. *Davidson v. United States*, No. 4:11CV1370 CDP, 2013 WL 1946206, at *4 (E.D. Mo. May 9, 2013) (observing that a petitioner must "demonstrate every element entitling him to relief, including the existence of a plea offer").

Even if a plea offer has been proven, there was no prejudice from any failure to convey it to Petitioner because the Court would not have approved the plea agreement based on the Agreed Factual Basis. If the Court assumes that a plea offer would have contained the information in the Agreed Factual Basis, this would mean that the plea offer would have proposed that Petitioner plead guilty to an § 846(b)(1)(B) offense—a conspiracy to distribute *500* grams of cocaine, but would have fixed the amount of cocaine involved in the offense at *250* grams—half of the drug-amount element of the offense. The Court would not have approved such an internally contradictory plea agreement. *Frye*, 132 S. Ct. at 1411 ("[I]f [the petitioner] fails to show a reasonable probability the trial court would have accepted the plea, there is no *Strickland* prejudice.").

### 2. Second Plea Offer

The record is devoid of any plea agreement or Agreed Factual Basis to show the existence of a second plea agreement. As stated, the only suggestion that such a plea agreement existed is the prosecutor's letter containing the comments to which the Court earlier referred. And the only proof as to the contents or a term in this inchoate plea offer is deduced from the prosecutor's

11

comment in her letter that the prior calculation of the quantity of cocaine was 806 grams of cocaine.

Even if the Court assumes, solely for the purpose of resolving this remanded claim, that there was a plea agreement on the table which allowed Petitioner to plead guilty to a cocaine offense and provided that the amount of cocaine involved in the offense was 806 grams, the Court finds that there was no prejudice from any failure on the part of counsel to present the second plea offer to Petitioner.

First, to establish prejudice in this context, a Petitioner must "show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Frye*, 132 S. Ct. at 1409. Petitioner has not demonstrated that the plea bargain involved a lesser included offense than the § 841(b)(1)(A) violation alleged in the indictment or that the sentence proposed in the second plea bargain involved a lower prison sentence than he received. Prejudice is an element of a *Strickland* claim. Though the Court could speculate that any sentence proposed would have had to be less than the life sentence imposed, Petitioner must affirmatively prove that element, as it cannot be presumed under the circumstances in this case.

Furthermore, as the Court finds in the next section of this opinion, Petitioner was offered and rejected a better deal by the government, by virtue of being offered a plea bargain which provided that the amount of cocaine involved in the conspiracy was 639 grams—a 167-gram reduction from the 806 grams offered in the shadowy second plea bargain. In *Frye*, the Supreme Court approved of the circuit court's finding that the petitioner's acceptance of a less favorable plea offer indicated that he would have accepted the earlier (and more favorable) offer extended to him. *Frye*, 132 S. Ct. at 1411. By reverse reasoning, the Court concludes that a rejection of a

12

more favorable, latter plea offer is an implicit indication that an earlier, less favorable offer likewise would have been rejected.

Moreover, Petitioner's testimony that he would have accepted this offer—containing a putative provision that the offense involved 806 grams of cocaine—when he rejected an offer to plead to an offense involving a substantially-reduced quantity of cocaine (as the Court finds later in this opinion), is simply not credible. *See e.g.*, *Merzbacker v. Shearin*, 706 F.3d 356 (4th Cir. 2013) (denying a state prisoner habeas corpus relief based on unrebutted correctness of state court's factual finding that a petitioner's testimony that he would have accepted a plea bargain if counsel had offered it was not credible).

### 3. Third Plea Offer

The issue with respect to the third offer is one purely of credibility. Mr. Stambaugh testified that he presented only one proposed plea agreement, and, though he stated that, given the ten years that had passed since Petitioner's conviction, he could not identify the third plea offer as being the "particular plea" he presented to Petitioner, he vividly recalled Petitioner's response when presented with the only plea agreement of which Mr. Stambaugh was aware. That comment, as described earlier in this opinion, was that Petitioner would risk a life sentence rather than take the 17 years' imprisonment the plea agreement provided. Mr. Stambaugh also testified unequivocally that Petitioner rejected his advice to accept the plea offer and likewise rejected the plea agreement.

The only actual plea agreement in the record is the plea agreement entered as Exhibit 2 at the evidentiary hearing [Doc. 615, Minutes, January 15, 2016 Evidentiary Hearing, Ex. 2]. The Court is persuaded that Exhibit 2 is the plea agreement which was presented to Petitioner. The Court therefore finds that Mr. Stambaugh both communicated this plea agreement to Petitioner

13

and discussed the proposed plea agreement with Petitioner. The Court reaches this conclusion based on Mr. Stambaugh's credible testimony as to the plea agreement and the Court's rejection of Petitioner's decidedly incredible testimony that directly contradicts Mr. Stambaugh's, to wit, that they "never discussed no plea" [Doc. 619, March 4, 2016 Evidentiary Hearing Transcript p.18].

Therefore, Petitioner has failed to carry his burden in this § 2255 motion of showing that counsel failed to communicate the plea offer extended to him by the government. No relief is due Petitioner with respect to this claim of ineffective assistance.

### B. Incorrect Legal Advice

The issue as to this claim also is one of credibility. Petitioner asserts that counsel told him that the government would have to show the jury the actual drugs to secure a conviction for conspiracy to distribute 500 grams of cocaine. Petitioner so testified at the evidentiary hearing. In contrast, Mr. Stambaugh stated emphatically that he had never advised a client that the government must produce the actual drugs at trial to sustain a conviction, that he had not given such advice to Petitioner, and that, indeed, he had explained to Petitioner that drugs charged in the conspiracy did not have to be brought into the courtroom and shown to the jury for Petitioner to be convicted of conspiracy.

The Court finds that, based on Mr. Stambaugh's credible testimony, Petitioner was not told that he could not be convicted of the conspiracy offense with which he was charged unless the actual drugs were shown to the jury. Petitioner's testimony to the contrary is lacking in credibility.

The Court finds that this claim of ineffective assistance, like the first such claim, is groundless, and that § 2255 relief is not warranted with respect to this claim either.

14

## IV. CONCLUSION

Because the Court determines that both claims of ineffective assistance alleged in Petitioner's § 2255 motion and remanded to this Court for an evidentiary hearing are meritless, the Court will **DENY** the motion to vacate.

## V. CERTIFICATE OF APPEALABILITY

The Court must now consider whether to issue a certificate of appealability (COA) should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a § 2255 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). A petitioner whose claims have been rejected on the merits must demonstrate that reasonable jurists would debate the Court's assessment of the claims. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has examined the claims of ineffective assistance under the relevant standard and finds that they do not deserve to proceed further because they have no viability. Reasonable jurists would not conclude that the Court's disposition of those claims is debatable or wrong. Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

**AN APPROPRIATE ORDER WILL FOLLOW.**

    s/J. RONNIE GREER
    UNITED STATES DISTRICT JUDGE

15

Case 2:06-cr-00020-JRG-MCLC   Document 627   Filed 11/07/16   Page 15 of 15   PageID #: 2842